## FORBEARANCE AGREEMENT

This Forbearance Agreement ("Agreement") is made as of December 31, 2015, by and among Aref Senno ("Aref"), Pauline Senno ("Pauline"), Aref Senno Trust dated July 17, 2009 ("Aref Trust"), Pauline Senno Trust dated July 17, 2009 ("Pauline Trust") (together, Aref, Pauline, Aref Trust and Pauline Trust shall be referred to herein as the "Guarantors"), PAS Real Estate LLC – 308 West Indian Trail Road ("PAS-308"), PAS Real Estate LLC – 1460 West Larkin ("PAS-1460"), PAS Real Estate LLC – 2300 West Peterson ("PAS-2300") (PAS-308, PAS-1460 and PAS-2300 are collectively referred to herein as the "Borrowers") and BCL – Bridge Funding, LLC (the "Lender") (Borrowers, Guarantors and Lender are sometimes referred to collectively herein as "the Parties").

## P R E A M B L E:

Reference is made to the loan documents and loans (individually a "Loan" and collectively the "Loans") entered into by Borrowers with Devon Bank (the "Original Lender") listed on Exhibit A attached hereto (together with all amendments and modifications thereto, the "Documents"):

Pursuant to the Documents, Original Lender made certain financing available to Borrowers. Borrowers are in default for failure to make payment (the "Existing Default") under the Documents. Lender intends to purchase the Loans from Original Lender. Upon Lender's purchase of the Loans from the Original Lender, Borrowers have requested the Lender to agree to forbear from exercising the Lender's rights, remedies and powers against Borrowers as set forth in the Documents and under applicable law until the Forbearance Termination Date (as defined below). The Lender has agreed to forbear against Borrowers after the consummation of its purchase of the Loans from the Original Lender in accordance with this Agreement so long as, among other things, the Borrowers execute and deliver this Agreement and the other agreements, instruments, and documents contemplated by this Agreement.

NOW, THEREFORE, in consideration of the premises which are incorporated herein by this reference and constitute an integral part hereof, the execution and delivery of this Agreement and the mutual covenants and agreements hereinafter set forth, the Parties hereto agree as follows:

1.      All capitalized terms used in this Agreement shall have the same meaning as in the Loan Agreement, unless those terms are otherwise defined in this Agreement. As used in this Agreement, the following terms shall have the following meanings:

(A)     "2300 Peterson Property" shall mean 2300 West Peterson Ave., Chicago, Illinois.

(B)     "2320 Peterson Property" shall mean 2320 West Peterson Ave., Chicago, Illinois.

(C)     "Accelerated Principal Payments" shall have the meaning set forth in Section 2(i)(h) of this Agreement.

(D)     "Additional Mortgages" shall mean mortgages against the 2320 Peterson Property, the Irving Park Property and the Wisconsin Property.

(E)     "Aurora Property" shall mean 308 West Indian Trail Road, Elgin, Illinois.

(F)    "Cook County Foreclosure" shall mean that certain foreclosure case filed by Original Lender against PAS-2300 and others as case number 2104CH13857 in the Circuit Court of Cook County, Illinois, County Department, Chancery Division.

(G)     "Documents" shall have the meaning set forth in the Preamble to this Agreement.

(H)    "Elgin Property" shall mean 1460 West Larkin, Elgin, Illinois.

(I)    "Existing Default" shall have the meaning set forth in the Preamble to this Agreement.

(J)    "Extension Forbearance Payoff Amount" shall have the meaning set forth in Section 2(i)(f) of this Agreement.

(K)    "Extension Forbearance Term" shall mean the six (6) month period immediately following the expiration of the Initial Forbearance Term and ending March 31, 2017.

(L)    "Forbearance Termination Date" shall mean March 31, 2017 which is the date upon which the Extension Forbearance Term expires or such earlier date if a Forbearance Default shall have occurred prior to March 31, 2017.

(M)    "Forbearance Default" shall have the meaning set forth in Section 10 of this Agreement.

(N)    "Foreclosure Cases" shall have the meaning set forth in Section 2(i)(a) of this Agreement.

(O)    "Irving Park Property" shall mean 3036 West Irving park Road, Chicago, Illinois.

(P)    "Initial Forbearance Prepayment Amount" shall have the meaning set forth in Section 2(i)(d).

(Q)    "Initial Forbearance Term" shall mean the period of time from the date of this Agreement to and including September 30, 2016.

(R)    "Judgments" shall mean the judgments entered in each of the Foreclosure Cases.

(S)    "Kane County - Aurora Foreclosure" shall mean that certain foreclosure case filed by Original Lender against PAS-308 and others in Case No. 14CH1352, in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, State of Illinois.

(T)    "Kane County - Elgin Foreclosure" shall mean that certain foreclosure case filed by Original Lender against PAS-1460 and others in Case No.

14CH1351, in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, State of Illinois.

(U)     "Liabilities" shall mean all indebtedness and all other liabilities, indebtedness and obligations of each of the Borrowers to the Lender, howsoever created, arising or evidenced, whether now existing or hereafter arising, whether direct or indirect (including those acquired by assignment), absolute or contingent, due or to become due, primary or secondary, joint or several, whether existing or arising through discount, overdraft, purchase, direct loan, participation, operation of law, or otherwise, including, but not limited to, all liabilities, indebtedness and obligations of each of the Borrowers to the Lender pursuant to this Agreement, any letter of credit, any standby letter of credit or any of the Documents and reasonable outside attorneys' and paralegals' fees or charges relating to the preparation of this Agreement, the Documents and the enforcement of Lender's rights, remedies, powers and security interests under this Agreement and the Documents, including, but not limited to, the drafting of any documents in the preparation and enforcement of the loans evidenced by the Documents.

(V)     "MRI Case" shall mean that certain case # 15L-50308 currently pending in the Circuit Court of Cook County, Illinois, Law Division filed by Original Lender against Guarantors.

(W)     "MRI Equipment" shall mean (1) ARIS II 03T Open Permanent Magnet Systems; and (2) Fast Scanning Package and MR (Angiography) Serial #C684, including 1 Extra Large Quad Flexible Spine and Body Coil, 1 Quad Shoulder Coil, 1 Quad Cervical Spine Coil, 1 FatsepTM (Fat/Water Separation), 1 Echo Planar Imaging & Diffusion Weighted Imaging.

(X)     "Properties" shall mean, collectively, the 2300 Peterson Property, the 2320 Peterson Property, the Aurora Property, the Elgin Property, the Irving Park Property, and the Wisconsin Property.

(Y)     "Wisconsin Property" shall mean that certain property of approximately 110 acres located in Morse, Ashland County, Wisconsin.

2.     In order to induce the Lender to (A) forbear from exercising the Lender's rights, powers and remedies against Borrowers under the Documents and applicable law, and (B) enter into this Agreement, the Parties hereto agree as follows:

(i)     Borrowers shall:

(a) Execute and deliver a General Release in the form which is attached hereto as Exhibit "B"; and

(b) Beginning on January 31, 2016 and on the last day of each month thereafter through and including September 30, 2016, Borrowers shall pay to Lender an amount equal to $19,500.00, which payments are

3

deemed interest payments and will not be applied by Lender to reduce the principal amount of the Loans. The payments made under this paragraph may be applied by Lender to the various Loans in Lender's sole discretion; and

(c) As long as a Forbearance Default has not occurred, on or before the last day of the Initial Forbearance Term, in full satisfaction of all of the amounts due under the Documents, the Borrowers shall be entitled to pay Lender an amount equal to $2,182,000.00 minus (i) any Accelerated Principal Payment (as defined below) previously made pursuant to this Agreement, plus (ii) a broker's fee of $39,000.00 plus (iii) all Lender's attorney's fees, and Lender's costs incurred on or before the date such payment is made (the "Initial Forbearance Prepayment Amount"), plus (iv) all unpaid monthly payments under 2(i)(b) above through the end of the Initial Forbearance Term, which amount the Borrowers acknowledge is a substantially reduced amount of the balances due under the Documents and that such reduced amount is being offered in exchange for timely payment hereunder; and

(d) If Borrowers have not paid Lender the Initial Forbearance Prepayment Amount on or before the expiration of the Initial Forbearance Term, Borrowers shall automatically have exercised the Extension Forbearance Term; provided, however, that there shall not be an Extension Forbearance Term unless the Borrowers make the final $19,500.00 payment to the Lender on the date the Initial Forbearance Term expires. Beginning on October 31, 2016, and on the last day of each month during the Extension Forbearance Term, Borrowers shall pay to Lender an amount equal to $20,000.00, which payments are deemed interest payments and will not be applied by Lender to reduce the principal amount of the Loans. The payments made under this paragraph may be applied by Lender to the various Loans in Lender's sole discretion; and

(e) On or before the last day of the Extension Forbearance Term, in full satisfaction of all of the amounts due under the Documents, Borrowers shall be entitled to pay Lender the amount set forth on Exhibit "C" minus (i) any Accelerated Principal Payment (as defined below) previously made pursuant to this Agreement, plus (ii) a broker's fee of $39,000.00 plus (iii) all Lender's attorney's fees,

4

and Lender's costs incurred on or before the date such payment is made (the "Extension Forbearance Payoff Amount"), which amount the Borrowers acknowledge is a substantially reduced amount of the balances due under the Documents and that such reduced amount is being offered in exchange for timely payment hereunder; and

(f) Notwithstanding any of the above, in the event Borrowers do not pay Lender the Initial Forbearance Prepayment Amount or the Extension Forbearance Payoff Amount on or before the Forbearance Termination Date, the reduced amounts shall no longer be applicable and Borrowers shall be liable for all amounts due under the Documents and Judgments based on the amounts provided in Exhibit "D" (without any reductions as provided in subsection (c) or (e) above) and at the statutory post judgment interest rates, plus the $39,000.00 broker's fee, plus all of Lender's legal fees and expenses; and

(g) Upon the sale or refinance of any or all of the Properties or any portion thereof, Borrowers shall pay the net proceeds of such sale or refinance to Lender, and the net proceeds shall be applied by Lender to reduce the principal amount of the Loans (an "Accelerated Principal Payment"). The term "net proceeds" as used in this section shall mean (a) the gross sales price of any property, minus custom and reasonable closing costs, attorneys' fees, prorations and broker's fees; or (b) for a refinance, the gross refinance amount less any customary closing costs, attorneys' fees, tax payments, and loan broker fees; provided, however, (1) the net proceeds of a sale or refinance must be no less than 93% of the gross sales price of any such property being sold or refinanced; (b) no broker fee may be paid to the Borrowers, or any party related to the Borrowers; (c) attorneys' fees paid from any gross proceeds must be directly related to the closing of the sale of the property being sold or the refinance of the property being refinanced. Borrowers acknowledge that Lender must approve any sale or refinance and any closing statement prior to such sale or refinance; and

(h) In addition to any agreements, documents and instruments described above, execute and deliver or cause to be executed and delivered to the Lender such other agreements, documents and instruments

5

required by and in form and manner satisfactory to the Lender to effectuate the terms of this Agreement; and

(i) Upon Lender's request, Borrowers shall execute and deliver to Lender amendments to each of the mortgages and assignments of rents against the Properties and each of the promissory notes associated therewith to reflect the terms contained in this Agreement. In that regard, Borrowers agree that all references in the Documents to the "Lender" shall mean Lender as defined in this Agreement; and

(j) Borrowers acknowledge and agree that in the event Borrowers prepay the principal of the Liabilities in full hereunder during the Initial Forbearance Term, that Borrowers must also pay interest through the end of the Initial Forbearance Term and that such interest is deemed earned on the first day of the initial Forbearance Term; and

(ii) Borrowers shall not sell, transfer, assign, pledge or mortgage any property of any of the Borrowers (including, without limitation, the Properties), except in favor of the Lender or except as otherwise contemplated under this Agreement.

(iii) Borrowers each acknowledge and agree that a default under any one of the Documents shall be deemed to be a default under all of the Documents and shall also be deemed to be a Forbearance Default hereunder regardless of whether the Loans are currently cross-defaulted or whether the Documents contain cross-default language. Borrowers acknowledge and agree that none of the Borrowers would be able to individually obtain the forbearance granted hereunder unless each of the Borrowers agreed to the modifications to the existing Documents as set forth herein. Additionally, Borrowers acknowledge and agree that in consideration of the accommodations made by Lender hereunder, each is responsible for the payment of each of the obligations hereunder, jointly and severally, and, _further provided_ that the Borrowers acknowledge and agree that each of the Properties shall secure the repayment of all of the Liabilities. Lender agrees that (i) upon the sale or refinance of the Properties pursuant to the terms of Section 2(i)(g) of this Agreement, or (ii) the payment of Initial Forbearance Prepayment Amount or the Extension Forbearance Payoff Amount, as applicable, Lender shall release its lien on the applicable portion or all of the Properties.

(iv) Notwithstanding anything else contained in the Documents, Borrowers acknowledge and agree that the Lender shall have no obligation to provide any loans or advances to Borrowers, make any financing available to Borrowers, or re-loan any portion of the principal amount of any of the Loans that have been paid or will at any time in the future be paid to the Lender by Borrowers or any other person or entity.

      (v)     Guarantors shall execute and deliver the General Release attached hereto as Exhibit "B" and an agreed order of judgment in the MRI Case (the "MRI Agreed Order") in the form attached hereto as Exhibit "E".

      (vi)    Borrowers and Guarantors shall execute and deliver or cause to be executed and delivered to Lender the Additional Mortgages, which shall include first mortgage against the 2320 Peterson Property, a first mortgage against the Irving Park Property and a first mortgage against the Wisconsin Property, as well as a collateral assignment of beneficial interest in the trust that owns the 2320 Peterson Property and the Irving Park Property.

      (vii)   Borrowers shall pay for the cost and expense of Lender obtaining title insurance for the Additional Mortgages.

      (viii)  Aref Trust and Pauline Trust shall execute and deliver to Lender continuing unconditional guaranties in form and substance acceptable to Lender.

     3.      So long as (A) no Forbearance Default has occurred; and (B) the Borrowers and Guarantors (i) each timely complies with all of their covenants and agreements contained in this Agreement and, (ii) each executes and delivers to the Lender, all of the agreements, instruments, and documents required to be delivered by each of them pursuant to this Agreement, and (iii) makes each of the payments required to be made to the Lender pursuant to this Agreement, the Lender agrees, except as otherwise provided in this Agreement, to forbear from taking any further action against the Borrowers and Guarantors with respect to the Existing Default for a period through and including the Forbearance Termination Date. Notwithstanding the above, Lender's agreement to so forbear shall have no force and effect and shall be deemed immediately null and void if either (I) any Forbearance Default occurs and/or any of the Borrowers or Guarantors fail to comply with or meet any of the requirements of clauses 3(i) through (iii) above; or (II) the Lender is required to return any monies received at any time or from time to time by the Lender from any person or entity with respect to the Liabilities due and owing the Lender by the Borrowers or Guarantors; or (III) except with the Lender's prior written consent, any of the Borrowers or Guarantors make an assignment for the benefit of creditors; provided, further, that the Lender may take any and all actions it deems reasonably necessary to protect its rights, remedies and powers with respect to Borrowers, the Guarantors, the Documents and applicable law against any action or proceeding taken by any third party not a party to this Agreement.

     4.      Borrowers and Guarantors each expressly acknowledge and agree that (A) the forbearance and payment described in Paragraph 3 of this Agreement constitutes good and valuable consideration to each of the Borrowers and Guarantors in exchange for Borrowers' and Guarantors' various covenants and agreements set forth in this Agreement; and (B) Borrowers and Guarantors have been represented and advised by counsel in connection with the execution and delivery of this Agreement and that such attorney has explained the terms and provisions of this Agreement to each of the Borrowers and Guarantors; and (C) the Lender's agreement to forbear pursuant to this Agreement terminates after the earlier of (i) the occurrence of a Forbearance Default; or (ii) the Forbearance Termination Date; and (D) unless Borrowers or Guarantors pay the Lender in full all of the Liabilities, immediately upon the earlier of (i) the occurrence of a Forbearance Default; or (ii) the Forbearance Termination Date, the Lender shall then have the ability to exercise all of its rights, remedies and powers pursuant to the Documents, the Judgments, and the MRI Agreed Order; and (E) no agreement or covenant of the Lender described in this Agreement shall have any further force and effect after the earlier of (i) the occurrence of a Forbearance Default; or (ii) the Forbearance Termination Date.

5.     All of the pledges, assignments, transfers, conveyances, mortgages and grants of security interest of any property given to the Lender by each of the Borrowers and Guarantors pursuant to the Documents or any other agreement, instrument or document related to or contemplated by the Documents, shall and hereinafter do continue to constitute pledges, assignments, transfers, conveyances, mortgages and grants of security interest of property to secure all of the Liabilities, whether now existing or hereinafter arising, including, but not limited to, pursuant to the Documents, this Agreement, all agreements, documents and instruments contemplated or required pursuant to this Agreement and/or any of the other Documents.

6.     Except as modified herein, Borrowers and Guarantors hereby (A) reaffirm and restate all of the covenants and agreements made by each of them in the Documents; and (B) reaffirm the validity and enforceability of each of the Documents; and (C) acknowledge, agree and confirm that this Agreement and the Documents executed by them are legal, valid, enforceable and binding upon each of them.

7.     Borrowers and Guarantors each represent, warrant, acknowledge, agree and confirm that the amounts set forth on Exhibit "D", plus Lender's legal fees accurately reflect Liabilities of Borrowers and Guarantors due and owing to the Lender under the Documents and Judgments as of the date set forth on Exhibit "D".

8.     Borrowers and Guarantors each agree to do such further acts and things and to execute and deliver to the Lender such additional assignments, agreements, powers, documents and instruments as the Lender may reasonably require or deem advisable to carry into effect the purposes of this Agreement, or to confirm onto the Lender its rights, powers and remedies under this Agreement, including, but not limited to, executing and delivering such amendments and/or restatements of the Documents required by the Lender and any additional pledge agreements or mortgages required by the Lender.  Borrowers and Guarantors shall perform any and all acts requested by the Lender to establish, maintain and continue any security interest and liens given to the Lender, including but not limited to, executing or authenticating financing statements and such other instruments and documents when and as reasonably requested by the Lender.  Borrowers and Guarantors hereby authorize the Lender through any of the Lender's employees, agents or attorneys to file any and all financing statements, including, without limitation, any continuations, transfers or amendments thereof required to perfect the Lender's security interest and liens in personal property under the applicable Uniform Commercial Code in effect without authentication or execution by Borrowers or Guarantors.

9.     Each of the following acts, occurrences or omissions shall constitute a "Forbearance Default" under this Agreement:

(A)     Default in payment when due of any of the payments required to be made to the Lender pursuant to this Agreement; or

(B)     Any of the Borrowers or Guarantors shall default in the performance or observance of any term, covenant, condition or agreement on their part to be performed or observed under any of the Documents, this Agreement or any other agreement, document or instrument relating to or contemplated by this Agreement; or

(C)     Any of the representations made by any of the Borrowers or Guarantors in this Agreement are false or misleading; or

(D)     Any of the Borrowers or Guarantors are subject to an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its or his debts as they mature or

8

makes an assignment for the benefit of creditors; or any of the Borrowers or Guarantors institute or consent to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceeding relating to it or him or to all or any part of its or his property;

        (E)    Death or incapacity of any of the Guarantors;

        (F)    Any default or event of default (howsoever such terms are defined) shall occur or will occur following the giving of notice or the passage of time, or both, under any of the Documents other than the Existing Default;

        (G)    Any of the Borrowers or Guarantors objects, contests or in any way directly, or indirectly, delays the entry of the any of the Agreed Orders; or

        10.    Notwithstanding anything contained in this Agreement, any agreement, instrument or document relating to or contemplated by this Agreement or the Documents, following the Forbearance Termination Date or upon the occurrence and continuance of any Forbearance Default, and in every such event, (A) the Lender may, in its sole and arbitrary discretion, proceed to Sheriff's sale of the Properties and UCC sale of the MRI Equipment for which the Borrowers and Guarantors hereby waive any and all defenses and consent to the confirmation of such sales; and (B) exercise any right, remedy or power set forth in this Agreement, any other agreement, instrument or document relating or contemplated by this Agreement, the Documents and/or applicable law. If a Forbearance Default occurs, any action filed to collect amounts due under the Documents, or any reinstatement of any action to collect amounts due under the Documents or foreclose any of the Documents, shall be based upon the balances due under the Documents as of the date of this Agreement (as provided in Exhibit D̲), with statutory post judgment interest accruing from September 16, 2015, plus all legal fees and expenses (such amount is herein referred to as the "Documents Loan Balance"). In connection with the calculation of the amounts due after a Forbearance Default or the Forbearance Termination Date, all payments made hereunder shall be applied by Lender in its sole discretion to fees, expenses, interest or principal, regardless of how such payments may have been designated prior to such Forbearance Default or Forbearance Termination Date. The purpose of this provision is to allow the Lender to collect the full amount due under the Documents without any discount Lender received when it purchased the Loans, and with statutory post judgment interest as if this Forbearance Agreement did not exist. The Borrowers and Guarantors acknowledge and agree the Borrowers and Guarantors requested Lender to take a risk in purchasing the Loans and that Borrowers and Guarantors should not receive any of the benefits of this Forbearance Agreement unless they fully perform hereunder.

        For purposes of clarity in the calculation of amounts due in the event of a Forbearance Default or the Forbearance Termination Date, guidance is provided by way of the following examples:

        (a) if Borrowers sell one of the Properties with net proceeds paid to Lender of $200,000 ("Example Proceeds"), paragraph 2(i)(g) above provides that the Example Proceeds are deemed an Accelerated Principal Payment that will reduce the amount Borrowers may pay under section 2(i)(c) and (e) above and Exhibit C if such payment is made prior to a Forbearance Default or the Forbearance Termination Date. However, if a Forbearance Default occurs subsequent to the payment of the Example Proceeds, the Lender may apply the Example Proceeds to fees, expenses, interest or principal of the Documents Loan Balance.

        (b) Borrowers payments under 2(i)(b) and 2(i)(d) are deemed "interest" payments if made when due and as long as no Forbearance Default has occurred. However, in the event of a Forbearance Default

or the Forbearance Termination Date, the payments made under 2(i)(b) and 2(i)(d) may be applied by Lender towards fees, expenses, interest or principal of the Documents Loan Balance.

All provisions pertaining to any remedy of the Lender shall be and are severable and cumulative and in addition to all other rights and remedies available to the Lender, at law and in equity, any one or more may be exercised simultaneously or successively.

11.     Borrowers and Guarantors each do hereby each release the Lender and its officers, directors, employees, agents, attorneys, personal representatives, successors, predecessors and assigns from all manner of actions, cause and causes of action, suits, deaths, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands, whatsoever, in law or in equity, and particularly, without limiting the generality of the foregoing, in connection with the Documents and any agreements, documents and instruments relating to the Documents and the administration of the Documents and the Liabilities, all indebtedness, obligations and liabilities of any of the Borrowers or Guarantors to the Lender and any agreements, documents and instruments relating to the Documents (collectively, the "Borrower Claims"), which any of the Borrowers or Guarantors now have against the Lender or ever had, or which might be asserted by their heirs, executors, administrators, representatives, agents, successors, or assigns based on any Borrower Claims which exist on or at any time prior to the date of this Agreement. The Borrowers and Guarantors expressly acknowledge and agree that they have been advised by counsel in connection with this Agreement and that they each understand that this paragraph constitutes a general release of the Lender and that they each intend to be fully and legally bound by the same. The Borrowers and Guarantors hereby waive any and all defenses any of them have against Lender in any manner whatsoever, including, but not limited to, relating to the Documents, the Liabilities, and the administration of the Documents, and the Liabilities as of the date hereof. The Borrowers and Guarantors further expressly acknowledge and agree that this general release and waiver shall have full force and effect notwithstanding the occurrence of a Forbearance Default pursuant to this Agreement.

12.     Notwithstanding anything contained in this Agreement, this Agreement (A) does not in any manner constitute any waiver of either (i) any of the Lender's rights, remedies or powers pursuant to (a) the Documents, (b) any other agreement, document or instrument by and between either of the Borrowers or Guarantors on the one hand, and the Lender on the other hand, or given, transferred or assigned by either of the Borrowers to the Lender or (c) applicable law, or (ii) any default or event of default (howsoever such terms are defined) pursuant to the Documents, any agreement, instrument or document relating to or contemplated by this Agreement, and/or any guaranty of any of the Liabilities; or (B) is not to be construed as an agreement by the Lender to either forbear or allow cure periods at a later date not specifically provided for in this Agreement, any agreement, instrument or document relating to or contemplated by this Agreement or any other applicable agreement, document or instrument.

13.     This Agreement shall be deemed a contract made under the internal laws of the State of Illinois and for all purposes shall be construed in accordance with the laws of the State of Illinois. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction. This Agreement may be executed in any number of counterparts, each of which counterparts, once executed and delivered, shall be deemed to be an original and all of which counterparts taken together, shall constitute but one and the same Agreement. This Agreement and any agreement, document or instrument relating to or contemplated by this Agreement, may be executed by any party to this Agreement or any of such agreements, documents or instruments by original signature, facsimile and/or electronic signature. This Agreement shall be binding upon and inure to the benefit of the Lender,

Borrowers, Guarantors and their respective successors, heirs and assigns. None of the Borrowers or Guarantors shall assign any of their rights nor delegate any of their obligations under this Agreement without the prior written consent of the Lender and no such consent by the Lender shall, in any event, relieve Borrowers or Guarantors of any of their obligations under this Agreement. All payments received by the Lender pursuant to this Agreement shall be applied by the Lender toward the Liabilities in such order as the Lender, in its sole discretion, may from time to time elect. Except as specifically set forth in this Agreement, the Lender makes no covenants to Borrowers or the Guarantors, including, but not limited to, any other commitments to further forbear. In the event of any conflict between this Agreement and any of the Documents, or any agreement, instrument or document relating to or contemplated by this Agreement, this Agreement shall govern and control. All notices required or permitted to be given to or made upon any party hereto shall be made in accordance with the provisions of the Documents.

14.     BORROWERS AND GUARANTORS EACH ACKNOWLEDGE THAT THIS AGREEMENT IS BEING SIGNED BY THE LENDER IN PARTIAL CONSIDERATION OF THE LENDER'S RIGHT TO ENFORCE THIS AGREEMENT AND ALL DOCUMENTS (INCLUDING BUT NOT LIMITED TO ALL AGREEMENTS, INSTRUMENTS, AND DOCUMENTS RELATED TO OR CONTEMPLATED BY THIS AGREEMENT), IN COOK COUNTY, ILLINOIS. EACH OF THE BORROWERS AND GUARANTORS CONSENT TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY FEDERAL OR STATE COURT IN COOK COUNTY, ILLINOIS FOR SUCH PURPOSES AND THEY WAIVE ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND ANY OBJECTION THAT SAID COUNTY IS NOT CONVENIENT. BORROWERS AND GUARANTORS WAIVE ANY RIGHTS TO COMMENCE ANY ACTION AGAINST THE LENDER IN ANY JURISDICTION EXCEPT THE AFORESAID COUNTY AND STATE. THE LENDER, THE BORROWERS AND GUARANTORS HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY WITH RESPECT TO ANY MATTER WHATSOEVER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, ALL AGREEMENTS, INSTRUMENTS AND DOCUMENTS RELATING TO OR CONTEMPLATED BY THIS AGREEMENT, THE DOCUMENTS, THE LIABILITIES AND/OR THE TRANSACTIONS WHICH ARE THE SUBJECT OF THIS AGREEMENT AND THE DOCUMENTS.

15.     BORROWERS AND GUARANTORS HEREBY EACH IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST ANY OR ALL OF THE BORROWERS AND GUARANTORS, JOINTLY AND SEVERALLY, FOR THE UNPAID LIABILITIES TO THE LENDER EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF THE LENDER SETTING FORTH THE AMOUNT THEN DUE, ATTORNEYS' FEES PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. IF A COPY OF THIS FORBEARANCE AGREEMENT AND ANY OF THE DOCUMENTS, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. BORROWERS AND GUARANTORS WAIVE THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS THE LENDER MAY ELECT UNTIL ALL OF THE LIABILITIES HAVE BEEN PAID IN FULL. BORROWERS AND GUARANTORS HEREBY WAIVE AND RELEASE ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH BORROWERS OR GUARANTORS MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER

THE TERMS OF AUTHORITY WHICH BORROWERS AND GUARANTORS HAVE GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

16.     The Preamble shall be part of this Agreement as if it were fully set forth herein.

17.     Notwithstanding anything to the contrary contained in this Agreement, this Agreement shall become effective on Lender's purchase of the Loans from Original Lender.

**[THE BALANCE OF THIS PAGE IS INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]**

## SIGNATURE PAGE TO FORBEARANCE AGREEMENT

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written. Aref Senno ("Aref"), Pauline Senno ("Pauline") (together, Aref and Pauline shall be referred to herein as the "Guarantors"),

**BORROWERS:**

**PAS REAL ESTATE LLC – 2300 WEST PETERSON**

By:_____
Name:_____
Title:_____

**PAS REAL ESTATE LLC – 308 WEST INDIAN TRAIL ROAD**

By:_____
Name:_____
Title:_____

**PAS REAL ESTATE LLC – 1460 WEST INDIAN**

By:_____
Name:_____
Title:_____

**GUARANTORS:**

By:_____
    **AREF SENNO**

By:_____
    **PAULINE SENNO**

**AREF SENNO TRUST DATED JULY 17, 2009**

By:_____
    AREF SENNO, CO-TRUSTEE

By:_____
    PAULINE SENNO, CO-TRUSTEE

**PAULINE SENNO TRUST DATED JULY 17, 2009**

By: _____
ARIN SENNO, CO-TRUSTEE

By: _____
PAULINE SENNO, CO-TRUSTEE

**LENDER**:

**BCL-BRIDGE FUNDING LLC**

By: _____

Title: _____

**PAULINE SENNO TRUST DATED JULY 17, 2009**

By: _____
ARIT SENNO, CO-TRUSTEE

By: _____
PAULINE SENNO, CO-TRUSTEE

**LENDER**:

**BCL-BRIDGE FUNDING LLC**

By: _____

Title: _____

14

## EXHIBIT A

### LOAN DOCUMENTS

#### NOTES AND MORTGAGES

1. Mortgage dated August 31, 1998 and modified September 29, 2003, August 25, 2008, January 6, 2009, and January 4, 2012, given by Aref Senno and Pauline Senno, recorded September 9, 1998, September 29, 2003, August 25, 2008, January 6, 2009, and January 4, 2012, respectively, at the office of the Cook County Illinois Recorder of Deeds, identified as Mortgage Document No.'s. 98803135, 0327233329, 0823833145, 0900633174, and 1200433011, respectively in the amount of $311,000.00.

2. Promissory Note dated as of August 31, 1998 issued by Aref and Pauline Senno to Seller in the original principal amount of $311,000.00.

3. Mortgage dated May 17, 2006 and modified July 20, 2011, September 13, 2011, and January 4, 2012, given by Aref Senno and Pauline Senno, recorded June 14, 2006, July 20, 2011, September 13, 2011, and January 4, 2012, respectively, recorded at the office of the Cook County Illinois Recorder of Deeds, as Document No.'s 0616517001, 1120112008, 1125612010, and 1200433010 in the amount of $750,000.00.

4. Promissory Note dated as of May 17, 2006 issued by Borrower to Seller in the original principal amount of $750,500.00.

5. Mortgage dated December 12, 2008 and modified March 7, 2014 and April 14, 2014, given by Aref Senno and Pauline Senno, recorded December 23, 2008, March 7, 2014 and April 14, 2014, respectively, at the office of the Cook County Illinois Recorder of Deeds, as document no.'s 0835833092, 1406642003, and 1410419221, respectively in the amount of $337,500.00.

6. Mortgage dated December 12, 2008 and modified February 19, 2014 and April 16, 2014, given by Aref Senno and Pauline Senno, recorded December 11, 2008, at the office of the Kane County Illinois Recorder of Deeds, as Document No. 2008K094038 and modified by Documents No. 2014K8230 and 2014K17879, in the amount of $337,500.00

7. Promissory Note dated as of December 12, 2008 issued by Borrower to Seller in the original principal amount of $337,500.00

8. Mortgage dated December 1, 2009 and modified March 9, 2010, July 8, 2010, November 16, 2010, February 23, 2011, September 13, 2011, February 14, 2013, March 29, 2013, October 11, 2013, October 15, 2013, January 3, 2014, February 19, 2014, April 14, 2014, given by PAS Real Estate LLC-2300 West Peterson, recorded January 5, 2010, March 9, 2010, July 8, 2010, November 16, 2010, February 23, 2011, September 13, 2011, February 14, 2013, March 29, 2013, October 11, 2013, October 15, 2013, January 3, 2014, February 19, 2014, April 14, 2014, respectively, at the office of the Cook County Illinois Recorder of Deeds, as Document No.'s 1000533111, 1006833152, 1018933108, 1032004141, 1105411033, 1125612009, 1304533053, 1308833009, 1328415095, 1328833020, 1400333033, 1405045044, and 1410419220, respectively in the amount of $650,000.00.

9. Promissory Note dated as of December 1, 2009 issued by Borrower to Seller in the original principal amount of $650,000.00.

10. Mortgage dated November 28, 2011, given by PAS Real Estate LLC-2300 West Peterson, and recorded January 4, 2012, at the office of the Cook County Illinois Recorder of Deeds, as Document No. 1200433007, in the amount of $400,000.00.

11. Promissory Note dated as of November 28, 2011 issued by Borrower to Seller in the original principal amount of $400,000.00.

12. Mortgage dated October 14, 2009, given by Aref Senno and Pauline Senno, recorded on October 30, 2009, at the office of the Kane County Illinois Recorder of Deeds, as Document No. 2009K80708, and modified by Documents Nos. 2013K11704, 2013K23632, 2013K73665, 2013K74596, 2014K845, 2014K17880, in the amount of $497,000.00,

### ALL LOAN DOCUMENTS

1. Promissory Note 03/14/14 ASenno-PSenno to Devon Bank (AR-Orig Note 12/03/03) - $250,000.00

2. Modification of Mortgage 03/14/14 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson Ave)

3. Business Loan Agmt 03/14/14 ASenno-PSenno to Devon Bank -

4. Promissory Note 01/14/14 ASenno-PSenno to Devon Bank (AR-Orig 12/03/03 and rollover) - $250,000.00

5. Modification of Mortgage 01/14/14 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

6. LLC Resolution to Grant Collateral 01/14/14 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

7. Business Loan Agmt 01/14/14 ASenno-PSenno to Devon Bank

8. Promissory Note 10/14/13 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $250,000.00

9. Modification of Mortgage 10/14/13 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

10. Business Loan Agmt 10/14/13 ASenno-PSenno to Devon Bank

11. LLC Resolution to Grant Collateral 10/14/13 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

12. Promissory Note 07/14/13 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $250,000.00

13. Modification of Mortgage 07/14/13 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

14. LLC Resolution to Grant Collateral 07/14/13 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

15. Business Loan Agmt 07/14/13 ASenno-PSenno to Devon Bank

16. Certificate of Trust LLC Member 0/714/13 ASenno-PSenno-ASenno Trust and Devon Bank

17. Certificate of Trust LLC Member 07/14/13 ASenno-PSenno-PSenno Trust and Devon Bank

18. Promissory Note 05/01/13 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $250,000.00

19. Modification of Mortgage 05/01/13 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

20. LLC Resolution to Grant Collateral 05/01/13 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

21. Business Loan Agmt 05/01/13 ASenno-PSenno to Devon Bank

22. Certificate of Trust LLC Member 05/01/13 ASenno-PSenno-PSenno Trust and Devon Bank

23. Certificate of Trust LLC Member 05/01/13 ASenno-PSenno-ASenno Trust and Devon Bank

24. Promissory Note 02/01/13 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $250,000.00

25. Modification of Mortgage 02/01/13 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

26. LLC Resolution to Grant Collateral 02/01/13 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

27. Business Loan Agmt 02/01/13 ASenno-PSenno to Devon Bank

28. Certificate of Trust LLC Member 02/01/13 ASenno-PSenno-ASenno Trust and Devon Bank

29. Certificate of Trust LLC Member 02/01/13 ASenno-PSenno-PSenno Trust and Devon Bank

30. Promissory Note 11/01/12 ASenno-PSenno to Devon Bank - $250,000.00

31. Modification of Mortgage 110112 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

32. Promissory Note 06/01/10 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $650,000.00

33. Modification of Mortgage 06/01/10 PAS Real Estate LLC-2300 W Peterson  and Devon Bank (2300 W Peterson)

34. LLC Resolution to Grant Collateral 06/01/10 ASenno-PSenno-PAS Real Estate LLC-2300 W Peterson to Devon Bank

35. Business Loan Agmt 06/01/10 ASenno-PSenno to Devon Bank

36. Certificate of Trust LLC Member 06/01/10 ASenno-PSenno-ASenno Trust and Devon Bank

37. Certificate of Trust LLC Member 06/01/10 ASenno-PSenno-PSenno Trust and Devon Bank

38. Promissory Note 03/01/10 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $650,000.00

39. Modification of Mortgage 03/01/10 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

40. LLC Resolution to Grant Collateral 03/01/10 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

41. Business Loan Agmt 03/01/10 ASenno-PSenno to Devon Bank

42. Certificate of Trust LLC Member 03/01/10 ASenno-PSenno-ASenno Trust and Devon Bank

43. Certificate of Trust LLC Member 03/01/10 ASenno-PSenno-PSenno Trust and Devon Bank

44. Promissory Note 12/01/09 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $650,000.00

45. Certificate of Exemption 12/28/09 ASenno-PSenno to Devon Bank (2300 W Peterson)

46. Mortgage 12/01/09 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson) – not to exceed $1,300,000.00

47. Assignment of Rents 12/01/09 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

48. LLC Resolution to Grant Collateral 12/01/09 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

49. Business Loan Agmt 12/01/09 ASenno-PSenno to Devon Bank

50. Certificate of Trust LLC Member 12/01/09 ASenno-PSenno-ASenno Trust and Devon Bank

51. Certificate of Trust LLC Member 12/01/09 ASenno-PSenno-PSenno Trust and Devon Bank

52. Promissory Note 12/01/08 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $650,000.00

53. Modification of Mortgage 12/01/08 ASenno-PSenno and Devon Bank (2300 W Peterson)

54. Business Loan Agmt 12/01/08 ASenno-PSenno to Devon Bank

55. Promissory Note 03/01/08 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $550,000.00

56. Modification of Mortgage 03/01/08 ASenno-PSenno and Devon Bank (2300 W Peterson)

57. Business Loan Agmt 03/01/08 ASenno-PSenno to Devon Bank

58. Promissory Note 12/01/07 ASenno-PSenno to Devon Bank (AR-Orig 12/01/03 and rollover) - $550,000.00

59. Promissory Note 11/01/11 ASenno-PSenno to Devon Bank - $559,453.62

60. Modification of Mortgage 11/01/11 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

61. LLC Resolution to Grant Collateral 11/01/11 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

62. Business Loan Agmt 11/01/11 ASenno-PSenno to Devon Bank

63. Commercial Security Agmt 11/01/11 ASenno-PSenno and Devon Bank

64. Promissory Note 08/01/11 ASenno-PSenno to Devon Bank - $569,549.32

65. Modification of Mortgage 08/01/11 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

66. LLC Resolution to Grant Collateral 08/01/11 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

67. Business Loan Agmt 08/01/11 ASenno-PSenno to Devon Bank

68. Certificate of Trust LLC Member 08/01/11 ASenno-PSenno-ASenno Trust and Devon Bank

69. Certificate of Trust LLC Member 08/01/11 ASenno-PSenno-PSenno Trust and Devon Bank

70. Promissory Note 05/17/11 ASenno-PSenno to Devon Bank - $581,719.00

71. Modification of Mortgage 05/17/11 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

72. LLC Resolution to Grant Collateral 05/17/11 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

73. Business Loan Agmt 05/17/11 ASenno-PSenno to Devon Bank

74. Commercial Security Agmt 05/17/11 ASenno-PSenno and Devon Bank

75. Certificate of Trust LLC Member 05/17/11 ASenno-PSenno-ASenno Trust and Devon Bank

76. Certificate of Trust LLC Member 05/17/11 ASenno-PSenno-PPSenno Trust and Devon Bank

77. Promissory Note 05/17/06 ASenno-PSenno to Devon Bank - $750,000.00

78. Mortgage 05/17/06 ASenno-PSenno and Devon Bank (2300 W Peterson) – not to exceed $1,500,000.00

79. Assignment of Rents 05/17/06 ASenno-PSenno and Devon Bank (2300 W Peterson)

80. Commercial Security Agmt 05/17/06 ASenno-PSenno and Devon Bank

81. Business Loan Agmt 05/17/06 ASenno-PSenno to Devon Bank

82. Promissory Note 11/01/11 ASenno-PSenno to Devon Bank - $420,609.29

83. Modification of Mortgage 11/01/11 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

84. LLC Resolution to Grant Collateral 11/01/11 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

85. Business Loan Agmt 11/01/11 ASenno-PSenno to Devon Bank

86. Promissory Note 11/01/08 ASenno-PSenno to Devon Bank - $444,051.51

87. Modification of Mortgage 11/01/08 ASenno-PSenno and Devon Bank (2300 W Peterson)

88. Promissory Note 08/01/08 ASenno-PSenno to Devon Bank - $446,940.25

89. Modification of Mortgage 08/01/08 ASenno-PSenno and Devon Bank (2300 W Peterson)

90. Promissory Note 08/01/03 ASenno-PSenno to Devon Bank - $498,276.12

91. Modification of Mortgage 08/01/03 ASenno-PSenno and Devon Bank (2300 W Peterson)

92. Promissory Note 08/31/98 ASenno-PSenno to Devon Bank - $311,000.00

93. Mortgage 08/31/98 ASenno-PSenno and Devon Bank (2300 W Peterson)

94. Assignment of Rents 08/31/98 ASenno-PSenno and Devon Bank (2300 W Peterson)

95. Promissory Note 11/28/11 ASenno-PSenno to Devon Bank - $400,000.00

96. Mortgage 11/28/11 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson) – not to exceed $800,000.00

97. Assignment of Rents 11/28/11 PAS Real Estate LLC-2300 W Peterson and Devon Bank (2300 W Peterson)

98. LLC Resolution to Grant Collateral 11/28/11 ASenno-PSenno-PAS Real Estate LLC to Devon Bank

99. Business Loan Agmt 11/28/11 ASenno-PSenno to Devon Bank

100. Promissory Note 03/14/14 ASenno-PSenno to Devon Bank (AR-Orig 10/14/09 and rollover) - $461,677.79

101. Modification of Mortgage 03/14/14 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

102. LLC Resolution to Grant Collateral 03/14/14 ASenno-PSenno-PAS Real Estate LLC-1460 West Larkin to Devon Bank

103. Business Loan Agmt 03/14/14 ASenno-PSenno to Devon Bank

104. Promissory Note 01/14/13 ASenno-PSenno to Devon Bank (AR-Orig 10/14/09 and rollover) - $470,835.18

105. Modification of Mortgage 01/14/13 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

106. LLC Resolution to Grant Collateral 04/14/13 ASenno-PSenno-PAS Real Estate LLC-1460 West Larkin to Devon Bank

107. Business Loan Agmt 01/14/13 ASenno-PSenno to Devon Bank

108. Certificate of Trust LLC Member 01/14/13 ASenno-PSenno-ASenno Trust and Devon Bank

109. Certificate of Trust LLC Member 01/14/13 ASenno-PSenno-PSenno Trust and Devon Bank

110. Promissory Note 01/14/14 ASenno-PSenno to Devon Bank (AR-Orig 10/14/09 and rollover) - $461,677.79

111. Modification of Mortgage 01/14/14 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

112. LLC Resolution to Grant Collateral 01/14/14 ASenno-PSenno-PAS Real Estate LLC-1460 West Larkin to Devon Bank

113. Business Loan Agmt 01/14/14 ASenno-PSenno to Devon Bank

114. Promissory Note 10/14/13 ASenno-PSenno to Devon Bank (AR-Orig 10/14/09 and rollover) - $462,688.48

115. Modification of Mortgage 10/14/13 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

116. LLC Resolution to Grant Collateral 10/14/13 ASenno-PSenno-PAS Real Estate LLC-1460 West Larkin to Devon Bank

117. Business Loan Agmt 10/14/13 ASenno-PSenno to Devon Bank

118. Promissory Note 07/14/13 ASenno-PSenno to Devon Bank (AR-Orig 10/14/09 and rollover) - $465,944.83

119.    Modification of Mortgage 07/14/13 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

120.    LLC Resolution to Grant Collateral 07/14/13 ASenno-PSenno-PAS Real Estate LLC-1460 West Larkin to Devon Bank

121.    Business Loan Agmt 07/14/13 ASenno-PSenno to Devon Bank

122.    Certificate of Trust LLC Member 07/14/13 ASenno-PSenno-ASenno Trust and Devon Bank

123.    Certificate of Trust LLC Member 07/14/13 ASenno-PSenno-PSenno Trust and Devon Bank

124.    Promissory Note 04/14/13 ASenno-PSenno to Devon Bank (AR-Orig 10/14/09 and rollover) - $469,278.67

125.    Modification of Mortgage 04/14/13 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

126.    LLC Resolution to Grant Collateral 04/14/13 ASenno-PSenno-PAS Real Estate LLC-1460 West Larkin to Devon Bank

127.    Business Loan Agmt 04/14/13 ASenno-PSenno to Devon Bank

128.    Certificate of Trust LLC Member 04/14/13 ASenno-PSenno-ASenno Trust and Devon Bank

129.    Certificate of Trust LLC Member 04/14/13 ASenno-PSenno-PSenno Trust and Devon Bank

130.    Promissory Note 10/14/12 ASenno-PSenno to Devon Bank (AR-Orig 10/14/09 and rollover) - $473,097.98

131.    Modification of Mortgage 04/14/13 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

132.    Business Loan Agmt 10/14/12 ASenno-PSenno to Devon Bank

133.    Certificate of Trust LLC Member 10/14/12 ASenno-PSenno-PSenno Trust and Devon Bank

134.    Promissory Note 10/14/09 ASenno-PSenno to Devon Bank - $497,000.00

135.    Mortgage 10/14/09 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin) – not to exceed $994,000.00

136.    Assignment of Rents 10/14/09 PAS Real Estate LLC-1460 West Larkin and Devon Bank (1460 W Larkin, Elgin)

137.    LLC Resolution to Grant Collateral 10/14/09 ASenno-PSenno-PAS Real Estate LLC-1460 W Larkin to Devon Bank

138.    Business Loan Agmt 10/14/09 ASenno-PSenno to Devon Bank

139.    Certificate of Trust LLC Member 10/14/09 ASenno-PSenno-ASenno Trust and Devon Bank

140.    Certificate of Trust LLC Member 10/14/09 ASenno-PSenno-PSenno Trust and Devon Bank

141.    Promissory Note 12/12/08 ASenno-PSenno to Devon Bank - $337,500.00

142.    Mortgage 12/12/08 ASenno-PSenno and Devon Bank (2300 W Peterson) – not to exceed $675,000.00

143.    Mortgage 12/12/08 ASenno-PSenno and Devon Bank (308 Indian Trail, Aurora) – not to exceed $675,000.00

144.    Assignment of Rents 12/12/08 ASenno-PSenno and Devon Bank (2300 W Peterson)

145.    Assignment of Rents 12/12/08 ASenno-PSenno and Devon Bank (308 Indian Trail, Aurora)

146.    Business Loan Agmt 12/12/08 ASenno-PSenno to Devon Bank

147.    Promissory Note 03/12/14 ASenno-PSenno to Devon Bank (AR-Orig 12/12/08 and rollover) - $306,143.50

148.    Modification of Mortgage 03/12/14 PAS Real Estate LLC-308 Indian Trail Road and Devon Bank (308 Indian Trail, Aurora)

149.    Modification of Mortgage 03/12/14 PAS Real Estate LLC-2300 West Peterson and Devon Bank (2300 W Peterson)

150.    Business Loan Agmt 03/12/14 ASenno-PSenno to Devon Bank

151.    Promissory Note 12/12/13 ASenno-PSenno to Devon Bank (AR-Orig 12/1/208 and rollover) - $306,725.95

152.    Modification of Mortgage 12/12/13 PAS Real Estate LLC-308 Indian Trail Road and Devon Bank (308 Indian Trail, Aurora)

153.    Modification of Mortgage 12/12/13 PAS Real Estate LLC-2300 West Peterson and Devon Bank (2300 W Peterson)

154.    Business Loan Agmt 12/12/13 ASenno-PSenno to Devon Bank

## EXHIBIT B

## GENERAL RELEASE

## RELEASE

This Release is made this 31st day of December 2015, by Aref Senno ("Aref"), Pauline Senno ("Pauline"), Aref Senno Trust dated July 17, 2009 ("Aref Trust"), Pauline Senno Trust dated July 17, 2009 ("Pauline Trust"), PAS Real Estate LLC – 308 West Indian Trail Road ("PAS-308"), PAS Real Estate LLC – 1460 West Larkin ("PAS-1460"), PAS Real Estate LLC – 2300 West Peterson ("PAS-2300") (PAS-308, PAS-1460 and PAS-2300 are collectively referred to herein as the "Borrowers") in favor of **BCL-BRIDGE FUNDING LLC**, an Illinois limited liability company ("BCL"), and **DEVON BANK** ("**Bank**").

The undersigned have entered into a certain Forbearance Agreement ("**Agreement**") with BCL of even date herewith.  The execution and delivery of this Release is a condition precedent to the obligations of BCL under the Agreement.

In consideration of the mutual covenants contained in the Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce BCL to execute the Agreement, each of the undersigned hereby agree as follows:

1.      Each of the undersigned for and on behalf of itself and its successors and assigns (collectively, "**Borrower Parties**") hereby releases and forever discharges BCL and all of its past, present or future directors, officers, employees, attorneys, agents and representatives, and any or all executors, administrators, predecessors, successors, owners, heirs or assigns of any of the foregoing (collectively, the "**BCL Related Parties**"), from any and all claims, actions, demands, damages, liabilities, debts, causes of action, either at law or in equity, and obligations of any kind or nature whatsoever, whether known or unknown, anticipated or unanticipated, direct or indirect, matured, unmatured, contingent, liquidated, unliquidated or hereafter existing, and whether in tort, contract or otherwise, from the beginning of time to the date of this Release, by reason of any act, omission, event, representation, transaction, matter, cause or thing based on or related to the Property, the loan that is the subject of the Agreement or the loan documents that are listed in the Agreement (collectively, "**BCL Claims**").

2.      Borrower Parties hereby release and forever discharge Bank and all of Bank's past, present or future directors, officers, employees, attorneys, agents and representatives, and any or all executors, administrators, predecessors, successors, owners, heirs or assigns of any of the foregoing (collectively, the "**Bank Related Parties**"), from any and all claims, actions, demands, damages, liabilities, debts, causes of action, either at law or in equity, and obligations of any kind or nature whatsoever, whether known or unknown, anticipated or unanticipated, direct or indirect, matured, unmatured, contingent, liquidated, unliquidated or hereafter existing, and whether in tort, contract or otherwise, from the beginning of time to the date of this Release, by reason of any act, omission, event, representation, transaction, matter, cause or thing whatsoever including, without limitation, claims based on or related to the Property, the loan that is the subject of the Agreement or the loan documents that are listed in the Agreement (collectively, "**Bank Claims**") (the Bank Claims and the BCL Claims shall hereinafeter be referred to together as the "Claims").

3.      Borrower Parties, for and on behalf of itself, and its respective successors and assigns, represents and guarantees that it has not sold, assigned or transferred to any person any Claims.

4.      This Release may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall be deemed to constitute one instrument.

5.      Terms used in this Release and not specifically defined herein shall have the meaning given such terms in the Agreement.

This Release has been executed on the day and year first written above.

**PAS REAL ESTATE LLC – 2300 WEST PETERSON**

By:_____
Name:_____
Title:_____

**PAS REAL ESTATE LLC – 308 WEST INDIAN TRAIL ROAD**

By:_____
Name:_____
Title:_____

**PAS REAL ESTATE LLC – 1460 WEST INDIAN**

By:_____
Name:_____
Title:_____

By:_____
          **AREF SENNO**

By:_____
          **PAULINE SENNO**

**AREF SENNO TRUST DATED JULY 17, 2009**

By:_____
          AREF SENNO, CO-TRUSTEE

By:_____
          PAULINE SENNO, CO-TRUSTEE

**PAULINE SENNO TRUST DATED JULY 17, 2009**

By:_____
          AREF SENNO, CO-TRUSTEE

By:_____
          PAULINE SENNO, CO-TRUSTEE

2

## EXHIBIT C

## CALCULATION OF EXTENSION FORBEARANCE PAYOFF AMOUNT

If Payment Made between October 1, 2016 and October 31, 2016: $2,210,750.00

If Payment Made between November 1, 2016 and November 30, 2016: $2,239,500.00

If Payment Made between December 1,  2016 and December 31, 2016: $2,268,250.00

If Payment Made between January 1, 2017 and January 31, 2017: $2,297,000.00

If Payment Made between February 1, 2017 and February 28, 2017: $2,325,750.00

If Payment Made between March 1, 2017 and March 31, 2017: $2,354,500.00

## EXHIBIT D

### CURRENT LOAN BALANCES (Excluding legal fees and litigation costs)

As of September 16, 2015, the Judgment of Foreclosure reflects that:

a. the unpaid principal balance of the Note is $400,106.87; and

b. the accrued and unpaid interest under the Note is $62,064.65.

As of September 16, 2015, the Judgment of Foreclosure reflects that:

a. the unpaid principal balance of the Note is $454,680.26; and

b. the accrued and unpaid interest under the Note is $70,652.02

As of September 16, 2015, the Judgment of Foreclosure reflects that:

a. the unpaid principal balance of the Note is $306,143.50; and

b. the accrued and unpaid interest under the Note is $46,875.34.

As of September 16, 2015, the Judgment of Foreclosure reflects that:

a. the unpaid principal balance of the Note is $250,000.00; and

b. the accrued and unpaid interest under the Note is $42,938.20.

As of September 16, 2015, the Judgment of Foreclosure reflects that:

a. the unpaid principal balance of the Note is $332,370.96; and

b. the accrued and unpaid interest under the Note is $51,891.45.

As of September 16, 2015, the Judgment of Foreclosure reflects that:

a. the unpaid principal balance of the Note is $461,677.79; and

b. the accrued and unpaid interest under the Note is $79,625.88.

## EXHIBIT E

## AGREED MRI JUDGMENT ORDER

See attached

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| **BCL-BRIDGE FUNDING LLC, as assignee of Devon Bank,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 15L-50308** |
| ) | |
| vs. ) | |
| ) | |
| **Aref Senno and Pauline Senno** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## AGREED FINAL ORDER OF JUDGMENT IN REPLEVIN

This cause coming to be heard on Plaintiff's motion to enter agreed order for judgment, with due notice given, and the Court being fully advised in the premises, it is hereby ordered:

1.     The Plaintiff has a superior right to possession of the equipment which is more particularly described on Exhibit "1" attached hereto and made a part hereof.

2.     The Sheriff of Cook County or such other officer to whom this is directed, having received, from Plaintiff or someone else on its behalf, a bond of sufficient security in double the value of the property described herein and valued at $300,000.00, take the specified property of the Defendants that may be found in Cook County and described as set forth on Exhibit "1" attached hereto and deliver the same to the Plaintiff, BCL-Bridge Funding LLC and may use reasonable force to execute on this order.

3.     Defendants having agreed that this is a final order, there is no right of the Defendants to post a bond and security in double the value of the property described herein and there shall be no further hearings as to the right to possession of the subject equipment.

4.     Judgment is entered in favor of the plaintiff.

5.     Plaintiff may file further motions for damages related to any property not delivered.

*Order Prepared By:*                                    ENTERED:
Jamie L. Burns
Levenfeld Pearlstein, LLC
2 N. LaSalle St., Suite 1300
Chicago, IL 60602                                      _____
Phone: (312) 346-8380                                        JUDGE
jburns@lplegal.com
Firm ID:

Dated: _____

### [THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK – SIGNATURE PAGE TO FOLLOW]

[SIGNATURE PAGE FOR AGREED ORDER OF FINAL JUDGMENT IN REPLEVIN]

DEFENDANTS:

By: _____
    AREF SENNO

By: _____
    PAULINE SENNO

By: _____
    John Zrnich, counsel for Defendants

PLAINTIFF:

BCL-BRIDGE FUNDING LLC

By: _____

Title: _____member_____

Jamie L. Burns
LEVENFELD PEARLSTEIN, LLC
Attorneys for Plaintiff
2 North LaSalle Street
13th Floor
Chicago, Illinois 60602
(312) 346-8380
jburns@lplegal.com
Attorney No.

LP 6923838.1 \ 40345-102881

EXHIBIT "1"

## LIST OF EQUIPMENT

ARIS ® II 03T Open Permanent Magnet Systems 2) Includes; Fast Scanning Package and MR (Angiography) Serial #C684, including 1 Extra Large Quad Flexible Spine and Body Coil, 1 Quad Shoulder Coil, 1 Quad Cervical Spine Coil, 1 FatsepTM (Fat/Water Separation), 1 Echo Planar Imaging & Diffusion Weighted Imaging.